BALTIMORE & OHIO RY. CO. v. GEORGE C. HUBBARD ET AL.

1. CONTRACT OF CARRIER ARBITRARILY LIMITING LIABILITY FOR NEGLIGENCE REGARDLESS OF VALUE, INVALID.

   A special contract of through carriage entered into between the owner of a race horse and a common carrier whereby the former agrees, in consideration of a reduced rate given by the latter, that the liability of the carrier for any loss or damage arising from its negligence shall be limited to an amount arbitrarily fixed without reference to, and far below, the real value of the horse, is against public policy and of no effect, notwithstanding the owner had the option to ship at the regular rate and thereby secure the full liability of the carrier.

2. REQUIRING CLAIM FOR DAMAGES TO BE MADE WITHIN FIVE DAYS UNREASONABLE.

   A provision contained in a special contract for carrying a race horse that no claim for damages shall be allowed, paid or sued for unless a verified claim therefor be made in writing and delivered to the agent of the carrier upon whose line the loss or injury occurs within five days after the removal of the horse from the car, is unreasonable, and will not be enforced when it appears from the evidence that the owner could not have complied therewith within such period.

3. EVIDENCE OF PEDIGREE AND SPEED RECORD OF BLOOD RELATION COMPETENT.

   Evidence of the pedigree of a race horse, and the record for speed of his blood relation, is competent for the purpose of showing the value of the horse

in an action to recover damages occasioned by the negligence of the carrier in transporting him.

4. EVIDENCE COMPETENT UNDER PETITION CONTAINING CAUSES OF ACTION EX CONTRACTU AND EX DELICTO.

Where the petition sets up two causes of action growing out of the same transaction, one *ex contractu* and the other *ex delicto,* and no motion is made to compel an election, but the record shows that the plaintiff completely abandoned his action *ex contractu,* the action may be properly considered as one *ex delicto,* although the contract is pleaded more at length in such cause of action than is necessary. Hence, an objection to the introduction of any testimony under such petition on the ground that it does not aver that plaintiff has performed all the conditions of said contract by him to be performed, which allegation may be necessary under a cause of action *ex contractu,* is properly overruled.

ERROR to the court of common pleas.

Kline, Carr, Tolles & Goff, for plaintiff in error.

E. J. Pinney, Hoyt, Munsell & Hall, for defendants in error.

Carrier liable for full amount when liability limited below real value. United States Express Co. v. Backman, 28 Ohio St. 144; Union Express Co. v. Graham, 26 Ohio St. 595; Pittsburg, C. C. & St. L. Ry. Co. v. Sheppard, 56 Ohio St. 68 [46 N. E. Rep. 61]; Pennsylvania Co. v. Yoder, 25 O. C. C. 32, 33; Stevenson v. Wells, Fargo & Co. 1 O. S. C. D. 312 (33 Bull. 247).

## WINCH, J.

The defendants in error brought their action in the common pleas court against the railroad company, alleging that on September 8, 1900, they were the owners of a race horse known as Fred S., worth $1,200, and on said day delivered the same at Warren, Ohio, to the P. & W. Ry. Co. to be conveyed over its road and the road of the B. & O. Ry. Co. and delivered safely at Wooster, for the freight charge of $22, which they prepaid; that the horse was carried by the P. & W. Ry. Co. in car No. 38,388 of the B. & O. Ry. Co. to Akron and there delivered to the latter company, which received it, and in consideration of its part of the freight money, assumed and agreed to complete the contract originally made with the P. & W. Ry. Co. and deliver the horse safely at its destination.

The petition further alleges that the railroad company did not complete the performance of its contract and did not safely convey and deliver said horse as it had undertaken to do, but, on the contrary, conducted itself negligently and carelessly in the transportation thereof; then follow two allegations of the petition, which read as follows:

"6. That when said car No. 38,388, in which said horse was being transported, arrived at Lodi, said defendant, by its agents and servants,

carelessly and negligently caused, permitted and allowed an engine and cars to come in collision with said car No. 38,388 with great force and violence, therein and thereby throwing said horse, Fred S., down to and upon the floor of said car, and then and thereby causing and inflicting such injuries upon said horse as to cause his death within a short time thereafter, to the damage to the plaintiffs in the sum of $1,200.

"7. The plaintiffs further say that said defendant neglected its duty and did not take proper care of said horse, nor did it safely carry and deliver the same at Wooster aforesaid, but wholly failed and neglected to carry and deliver the same to said Frazier at the city of Wooster aforesaid, by reason of which the plaintiffs have sustained damages in the sum of $1,200."

Then follows a general prayer for judgment in the sum of $1,200, "their damages so sustained as aforesaid."

The railroad company answered, admitting the shipping of the horse, payment of freight charge, the receipt of the horse by the defendant company at Akron and its transportation to Lodi, where it claims it was removed from the car by the plaintiffs, they claiming that it was sick, and denying all else.

As a further defense the railroad company alleges that the horse was shipped pursuant to a special written contract whereby the plaintiffs agreed, in consideration of a lower rate of freight than the usual and official published tariff rate for the carriage of live stock, that the railroad company should not be liable beyond an agreed valuation of $100 for the horse, whether loss or damage should occur through the negligence of the P. & W. Ry. Co. or any connecting carrier, or their employes, or otherwise, and that no claim for damages should be allowed or paid, or sued for by said plaintiffs, unless a claim therefor should be made in writing, duly verified and delivered to the agent of the carrier upon whose line the loss or injury occurred within five days after said horse should be removed from the car.

The railroad company further alleges that the plaintiffs had the option of shipping the horse at a higher rate of freight and thereby receiving the security of the liability of the railroad company as a common carrier, but that they voluntarily decided to ship at said reduced rate of freight and upon the conditions of said special contract, and that the condition as to five days' notice had not been complied with.

A reply being filed, the case was tried to a jury and resulted in a verdict for $1,200 for the plaintiffs. Motion for a new trial was overruled, bill of exceptions taken and filed in this court with petition in error

alleging numerous errors, which may be classified as affecting pleadings, rulings on evidence and the charge of the court.

It is claimed by plaintiff in error that the petition sets forth an action on a contract for safe carriage, and therefore should have contained an allegation that plaintiffs below had themselves performed all of the conditions of said contract by them to be performed. This question was raised by objection to the introduction of any testimony under the petition, and was overruled.

The petition appears, however, to set up two causes of action—one on contract and the other in tort. There was no motion made to compel an election, but the record shows that the plaintiffs below completely abandoned all claims arising out of any alleged breach of their contract and relied solely upon the tort complained of. We think the tort is fully set up in the petition, although the contract may be pleaded more at length than it should be in an action wholly founded on a tort.

The charge of the court and many rulings on evidence are objected to on the ground that the court erred in holding, as it did, that the limitation of liability and provision for five days' notice in the shipping contract were not binding upon the owners and shippers of the horse.

We think that the law of Ohio was correctly applied to this case by the trial court.

"It is the settled law of this state that a common carrier cannot, by special agreement, relieve himself from responsibility for his own negligence, nor limit his liability for losses resulting therefrom."

Pittsburg, C. C. & St. L. Ry. Co. v. Sheppard, 56 Ohio St. 68 [46 N. E. Rep. 61], and cases there cited. This case was decided February 2, 1897, and was a race horse case. In November, 1897, Judge Summers of the circuit court, second circuit, in the case of Cleveland, C. C. & St. L. Ry. Co. v. Simon, 8 Circ. Dec. 540, 545 (15 R. 123), distinguished the latter case from the former on the wording of the contracts. He says:

"In Pittsburg, C. C. & St. L. Ry. Co. v. Sheppard, *supra*, an examination of the record discloses that there was no agreed valuation of the horses, but the contract provided, 'that in consideration of being released from liability, as hereinafter specified, the said company agrees to transport one carload of horses,' at the reduced rates."

Judge Summers held:

"A contract of carriage, fairly made and signed by a shipper, agreeing upon the valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, will, even in case of loss through negligence, be upheld, and the shipper limited to the agreed valuation."

Judge Parker of the sixth circuit, in another horse case (Pennsylvania Co. v. Yoder, 25 O. C. C. 32), held otherwise, saying that Cleveland, C. C. & St. L. Ry. Co. v. Simon, *supra,* did not appear to be in harmony with the decisions of the Supreme Court, and we are inclined to the opinion of Judge Parker.

If an arbitrary valuation of one hundred dollars may be agreed upon, without reference to the true value of the horse, why not an arbitrary valuation of one dollar, or any nominal valuation? Of course a mere nominal valuation would not avoid the rule laid down in Pittsburgh, C. C. & St. L. Ry. Co. v. Sheppard, *supra,* and a partial exemption from liability seems forbidden by the rule laid down in United States Express Co. v. Backman, 28 Ohio St. 144, 155.

These views are perhaps sustained by Judge Spear in the case of Toledo & O. C. Ry. Co. v. Bowler, 63 Ohio St. 274 [58 N. E. Rep. 813], who says, on page 283, speaking of a carrier of freight:

"It has often, perhaps generally, been held that the carrier may not stipulate against his own negligence for a liability less than the real value of the article carried."

This was said November 13, 1900, three years after the decision of Cleveland, C. C. & St. L. Ry. Co. v. Simon, *supra.*

The provision as to five days' notice is another limitation on the liability of a common carrier which, for like reasons, is void, being against public policy. In this case the record shows that the five day limitation was too short and altogether unreasonable.

The owners of the horse could hardly have complied with it, as shown by the evidence in the case. Stevenson v. Wells, Fargo & Co. 1 O. S. C. D. 312 (33 Bull. 247), decided by the Supreme Court without report.

We find no prejudicial errors in the rulings of the trial court on the presentation of evidence. As to the questions asked regarding the speed and pedigree of the horse the matter was ruled upon in the case of Pittsburg, C. C. & St. L. Ry. Co. v. Sheppard, *supra,* where it was held:

"In an action to recover the value of a trotting horse, evidence of his pedigree, and that some of his blood relations have a record for speed, is competent as affecting his value."

The judgment is affirmed.